IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GCCG INC,

    Plaintiff,

v.

ERIC HOLDER,

    Defendant.

No. C 13-00974 CRB

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

This case requires the Court to determine, in the context of an administrative agency's decision not to grant a nonimmigrant visa, whether a non-citizen employee's job constituted a "specialty occupation" under the Immigration and Nationality Act ("INA"). The distinction between specialty occupation and non-specialty occupation is important because the INA authorizes temporary visas for nonimmigrant aliens who are sponsored by an employer to perform a "specialty occupation." Wine distributor GCCG and its accountant Yao Zhang ("Plaintiffs") argue that the government defendants ("Defendants") have incorrectly relied on a determination by United States Citizenship and Immigration Services ("USCIS") that Zhang's job responsibilities are more similar to those of a bookkeeper—which is not a specialty occupation—than an accountant, which is a specialty occupation. Defendants argue that regardless of his title, Zhang was substantially performing the work of a bookkeeper as described by the Bureau of Labor Statistics' Occupational Outlook Handbook ("OOH"), and that the employer did not meet its burden to establish that a small wine distributor needed the services of a certified accountant.

## I. BACKGROUND

GCCG, Inc. is a wine distributor based in Fremont, California that employs five people and reports annual proceeds of more than $1 Million. Certified Administrative Record ("A.R.") (dkt. 14-2) at 18, 30. On April 1, 2012, GCCG filed a petition with USCIS to obtain an H-1B nonimmigrant specialty worker visa for Zhang, a Chinese national, so that he could work as a part-time accountant. Id. at 29. On May 15, 2012, USCIS issued a Request For Evidence for information related to Zhang's employment, including a more specific job description, job listings for accounting positions listed by similarly sized companies, evidence of past employment practices, proof that similarly situated companies regularly employed accountants, and letters or affidavits from people in the industry attesting that such companies routinely employ accountants. See id. at 79-81. Plaintiffs submitted this information on August 6, 2012. See id. at 82-118. As part of this response, Plaintiffs listed eleven of Zhang's employment responsibilities:

1. Manage input, along with handling of financial data but also reports generated by the automated system used by the company (Excel, Quickbooks, Turbotax)
2. Prepare various monthly reports such as closing reports, cost accounting reports, and profit and loss statements
3. Gather information and conduct an analysis of financial information in preparation of making account entries
4. Establish and maintain new and improved control procedures being implemented into a company's accounting system.
5. Oversee different accounting systems to ensure completeness, as well as accuracy
6. Review various accounting systems and other financial systems for effectiveness and accuracy
7. Review current trends for expenditures and revenue, followed by making appropriate recommendations to company executives regarding spending, finance control, and budgeting

2

8. Take the lead in resolving any discrepancies pertaining to accounting

9. Provide other personnel, as well as clients and vendors with information on billing, invoice and accounting policies and procedures

10. Review new budgets, entries for payroll, prepared invoices, revenue reports, budgets, and other documents associated with accounting

11. Maintain a good relationship with auditors, whether inside or outside the company.

Id. at 102.

Meanwhile, GCCG employed Zhang as a part-time accountant. Id. at 27. Zhang worked twenty-five hours per week and received twenty-five dollars per hour, the "prevailing wage for a Level 1 accountant." Plaintiff's Motion For Summary Judgment ("P. MSJ") (dkt. 15) at 2. Zhang has a Master's Degree in Business Administration from Northwestern Polytechnic University, which is located in California. A.R. at 31.

USCIS denied Plaintiffs' petition on November 8, 2012. Id. at 2. On March 4, 2013, Plaintiffs filed suit to request declaratory and injunctive relief. See Compl. (dkt. 1) at 1. Defendants filed their Motion for Summary Judgment on July 19, 2013 ("Def. MSJ") (dkt 14), and Plaintiffs filed their own Motion for Summary Judgment one month later. See generally P. MSJ.

**II.  LEGAL STANDARD**

The INA permits non-citizen temporary workers to work in the United States if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). A specialty occupation requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). Accounting is explicitly listed as an occupation that satisfies the specialty occupation requirement. 8 C.F.R. § 214.2(h)(4)(ii) (including a non-exhaustive list of fields that are presumed to be specialty occupations).

3

The employer can also establish that the employee performs a specialty occupation by showing that the position meets one of four criteria:

1. A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

2. The degree requirement is common to the industry in parallel positions among similar organizations, or in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

3. The employer normally requires a degree or its equivalent for the position; or

4. The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The employer has the burden of proof to establish that the employee's position meets one of these requirements. 8 U.S.C. § 1361.

Under the Administrative Procedure Act ("APA"), a district court can only set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a deferential standard, "and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see Sierra Club v. Clark, 756 F.2d 686, 690 (9th Cir. 1985) ("Traditionally, an agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable."). However, the court may determine whether "there has been a clear error of judgment by the agency and whether the agency action was based upon a consideration of relevant factors." Nance v. EPA, 645 F.2d 701, 705 (9th Cir. 1981).

Courts routinely resolve APA challenges by summary judgment. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1481 (9th Cir. 1994). The district court "is not required to resolve any facts in a review of an administrative proceeding." Occidental Eng'g

4

1  Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985). The purpose of the district court in deciding
2  a motion for summary judgment, then, "is to determine whether or not as a matter of law the
3  evidence in the administrative record permitted the agency to make the decision it did." Id.
4  An agency's decision is arbitrary and capricious if it "offered an explanation for the its
5  decision that [ran] counter to the evidence before the agency." Sw. Ctr. for Biological
6  Diversity v. U.S. Forest Serv., 101 F.3d 1443, 1448 (9th Cir. 1996).

### III. DISCUSSION

#### a. The Majority Of Zhang's Responsibilities Are Bookkeeper Duties

Defendants argue that, regardless of Zhang's title, the majority of his responsibilities are closer to bookkeeper duties as defined by OOH than accounting duties. This is an important distinction because to qualify as a specialty occupation, USCIS regulations "require the position to entail mainly the performance of the specialty occupation duties." Def. MSJ at 9. After analyzing Zhang's eleven stated responsibilities, USCIS concluded that eight fall under the bookkeeping definition and only three are accounting responsibilities. Id. at 13-14. As a result, Defendants argue that "Zhang's duties would be dominated by bookkeeping, an occupation which does not require a bachelor's degree." Id. Plaintiffs respond that eight of Zhang's tasks actually fall under the OOH definition of accounting duties, while only three are substantially bookkeeping duties. P. MSJ at 10-11.

While this dispute appears to create a genuine dispute of material facts, the Court is limited to the administrative record in ruling on a challenge to an administrative action under the APA. Occidental Eng'g Co., 753 F.2d at 769. When an employee's responsibilities can fall into two occupation classifications—one specialty and one not specialty—the non-specialty duties must be actually equivalent to the specialty duties to qualify for the same treatment. See id., 753 F.2d at 769 (finding that plaintiff's editing role was not equivalent to a specialty occupation because he did not supervise journalists). However, an agency may not arbitrarily reclassify a plaintiff's responsibilities so that they fit the definition for a non-specialized occupation. Assuta Med. Ctr. v. U.S. Dep't of Homeland Sec., 265 Fed. App'x.

5

542, 543 (9th Cir. 2008) (finding an agency decision arbitrary and capricious because the agency "arbitrarily reclassified each of those tasks to determine that [the plaintiff] was actually performing a variety of non-specialty occupations"). While USCIS may have made such arbitrary decisions for some of Zhang's responsibilities, analysis of all eleven duties reveals that the majority of his tasks are, in fact, closer to bookkeeping responsibilities.

### i. Manage Input And Handling Of Financial Data

The OOH states that bookkeepers "enter (post) financial transactions into appropriate computer software . . . [and] put costs (debits) as well as income (credits) into the software." Plaintiffs and Defendants agree that this constitutes a bookkeeping responsibility. Def. MSJ at 13; P. MSJ at 10.

### ii. Prepare Monthly Reports Including Profit And Loss Statements

The OOH states that bookkeepers "produce reports such as balance sheets . . . , income statements, and totals by account." Plaintiffs and Defendants agree that this constitutes a bookkeeping responsibility. Def. MSJ at 13; P. MSJ at 10.

### iii. Gather And Analyze Financial Information

The OOH states that accountants "assess financial operations." Plaintiffs and Defendants agree that this constitutes an accounting responsibility. Def. MSJ at 13; P. MSJ at 10.

### iv. Establish Control Procedures For Accounting System

The OOH states that accountants "suggest ways to reduce costs, enhance revenues, and improve profits." Plaintiffs and Defendants agree that this constitutes an accounting responsibility. Def. MSJ at 13; P. MSJ at 10.

### v. Oversee Accounting Systems For Completeness And Accuracy

Defendants argue that this responsibility falls under the OOH's description that bookkeepers "[c]heck figures, postings, and reports for accuracy [and] [r]econcile or note and report any differences that they find in the records." Def. MSJ at 13. This role is closely related to Zhang's sixth role, discussed below. Due to the language used to describe this duty ("Oversee different accounting systems to ensure completeness, as well as accuracy"), the Court finds that this

6

responsibility is closer to OOH's description of a bookkeeper because it appears more focused on checking for errors rather than making recommendations or performing specialty financial services.

### 6. Review Accounting Systems For Effectiveness And Accuracy

Plaintiffs argue that this role falls under OOH accounting duties for efficiency and financial operations, and also the accounting duty to "[s]uggest ways to reduce costs, enhance revenues, and improve profits." P. MSJ at 11. The language used to describe this duty ("Review various accounting and other financial systems for effectiveness and accuracy") is more active and likely requires a degree of financial specialty. Accordingly, the Court finds that this constitutes an accounting responsibility.

### 7. Review Current Trends For Expenditures And Revenue And Make Recommendations To Executives Regarding Finances

The OOH states that accountants "suggest ways to reduce costs, enhance revenues, and improve profits." Plaintiffs and Defendants agree that this is an accounting responsibility. Def. MSJ at 13; P. MSJ at 10.

### 8. Resolve Any Discrepancies Pertaining to Accounting

The OOH states that bookkeepers "Check figures, postings, and reports for accuracy [and] [r]econcile or note and report any differences that they find in the records." Def. MSJ at 13-14. Plaintiffs and Defendants agree that this is a bookkeeping responsibility. Def. MSJ at 13; P. MSJ at 11.

### 9. Provide Personnel With Information On Billing, Invoice, and Accounting Procedures

Plaintiffs argue that this role is closer to the description for accountants than for bookkeeprs: "In addition to examining and preparing financial documentation, accountants and auditors must explain their findings. This includes face-to-face meetings with organization managers and individual clients, and preparing written reports." P. MSJ at 11. The Court finds that the detailed description of accountants identified by Plaintiffs is closely related to the responsibility to provide personnel, clients and vendors with information about billing, invoice, and accounting policies and that this is an accounting responsibility.

7

### 10. Review New Budgets, Payroll Entries, Invoices, And Revenue

Defendants argue that this role is equivalent to the OOH description that bookkeepers "take on additional responsibilities such as payroll, billing, purchasing (buying), and keeping track of overdue bills." Def. MSJ at 14. Plaintiffs argue that this is more similar to the OOH description of management accountants, who "record and analyze the financial information of the organizations for which they work" for "internal use by business managers, not by the general public." P. MSJ at 11. Here, the description of the accounting and bookkeeping roles appear to equally encompass this role. When a role could be characterized as both a specialty occupation and a non-specialty occupation, the Court defers to USCIS' interpretation of that occupation as a non-specialty occupation. E.G. Enters., Inc. V. Dep't of Homeland Sec.. 467 F. Supp. 2d 728, 738 (E.D. Mich. 2006); see Sierra Club, 756 F.2d at 690 (finding that courts should defer to agency interpretation of their own regulations). As a result, the Court finds defer to the agency's determination that this constitutes a bookkeeping responsibility.

### 11. Maintain Good Relationship With Auditors

Defendants argue that this role is equivalent to the OOH description that bookkeepers must "communicate with clients." Def. MSJ at 14. Where, as here, some responsibilities could be associated with both specialty occupations and non-specialty occupations, courts defer to the agency's interpretation of its own regulations. See Talk Am., Inc. v. Mich. Bell Tel. Co., 131 S. Ct. 2254, 2260-61 (2011) (deferring to the agency's decision in the absence of a controlling unambiguous statute). Thus, the Court finds that this is a bookkeeping responsibility.

After considering each of Zhang's roles and the OOH descriptions of bookkeeper responsibilities and accounting responsibilities, the Court finds that six of Zhang's roles are most similar to bookkeeping responsibilities, while five are more similar to accounting responsibilities. Defendants are correct that, in order for "USCIS to have found that GCCG's proffered job was a specialty occupation, the majority of Zhang's time must have been spent performing the duties of a specialty occupation." Def. MSJ at 16. Although neither party

8

1 provided any information regarding the amount of time that Zhang spent on each of his
2 duties,[1] the representation of the eleven roles indicates that the agency's determination that
3 Zhang did not effectively hold a specialty occupation was not arbitrary and capricious, and is
4 therefore afforded deference. See Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43;
5 see also Occidental Eng'g Co., 753 F.2d at 769 (finding that plaintiff's editing role was not
6 equivalent to a specialty occupation because he did not supervise journalists).

### B. Plaintiffs Have Not Satisfied The Four-Factor Test

Another method to determine whether an individual is employed in a specialty occupation is to weigh whether the occupation satisfies one of four established criteria, including (1) educational requirements, (2) common requirements for an occupation in the relevant industry, (3) the employees' previous employment, and (4) specialized nature of the employee's responsibilities. 8 C.F.R. § 214.2(h)(4)(iii)(A).

### 1. Requirement of a Bachelor's Degree

A determination on this factor hinges on whether Zhang is performing the role of an accountant or a bookkeeper. Defendants argue that because the majority of Zhang's responsibilities are closer to bookkeeping duties than accounting duties, it cannot be considered a specialty occupation because a bachelor's degree is not required to become a bookkeeper. Def. MSJ at 17. USCIS determined that Zhang's role was closest to a public accountant or a management accountant, which are not usually hired by five-employee companies because "public accountants are usually CPAs with their own business or employed by accounting firms while management accountants are usually involve[d] with

---

[1] There are a number of ways to quantify the split between Zhang's responsibilities more effectively than the parties have done in their papers. Looking at the amount of time that Zhang spent on his bookkeeping responsibilities compared to his accounting responsibilities, for example, would likely present a better picture of whether he performed a specialty occupation or a non-specialty occupation. For example, even if six of eleven of Zhang's duties were bookkeeper responsibilities, he would more likely be considered an accountant if he spent the majority of his time on the five responsibilities that are accounting responsibilities. Additionally, an individual may need to have an accounting degree in order to work for a particular job even if the majority of his duties are non-specialty tasks. However, since the Ninth Circuit urges deference to the agency's interpretation of its own regulations, Sierra Club, 756 F.2d at 690, the Court finds that Zhang is more likely a bookkeeper because the majority of his responsibilities are bookkeeper duties.

9

1  budgeting and performance evaluation." A.R. at 7. The Court defers to the agency's
2  determination that performing specialty occupation duties that are incidental to the primary
3  functions is insufficient to establish that the duties to be performed qualify as specialty
4  occupation: a bachelor's degree was not required for Zhang's position. A.R. at 5; see <u>Bassiri</u>
5  <u>v. Xerox Corp.</u>, 463 F.3d 927, 931 (9th Cir. 2006) (finding that the Department of Labor's
6  analysis of its own regulation was not arbitrary and capricious because it was not "plainly
7  erroneous or inconsistent with the regulation").

### 2. Bachelor's Degree Common To The Industry

To prove that a bachelor's degree was commonly required for accountants employed by small wine distributors, USCIS asked Plaintiffs to produce advertisements for job openings, letters from an industry association, or letters from individuals in the industry. A.R. at 81. The agency clarified that the letters should include (1) the writer's qualifications as an expert, (2) the writer's experience giving such opinions, citing specific instances, (3) how the conclusions were reached, and (4) the basis for the conclusions supported by copies or citations of any research material used. <u>Id.</u> Plaintiffs produced two job listings for wine distributors, and other job postings for small companies that hire accountants. <u>Id.</u> at 85-95. Plaintiff also produced letters from other wine distributors and an accountant who regularly works with small businesses attesting that similarly situated companies regularly hire accountants. <u>Id.</u> at 142-44.

#### a. Job Listings

USCIS determined that none of the job postings were adequate. <u>Id.</u> at 9. USCIS rejected the job listings for the other wine companies because "it is difficult to ascertain whether they are similar to the petitioner's organization in their number of employees, years in service and amount of gross annual income. Moreover, it cannot be determined that those advertisements are representative of their usual recruiting and hiring practices for the advertised positions." <u>Id.</u> The agency rejected the other job listings for a variety of reasons, including lack of clear educational requirement, ambiguous description of required skills, or statement that accounting degree was "preferred" rather than "required." <u>Id.</u>

10

The job listing for Crimson Wine Group unambiguously requires a bachelor's degree in accounting and significant prior experience. Id. at 85. But USCIS is correct that the advertisement does not provide any information about the size of Crimson Wine Group, which creates doubt as to whether an accounting degree would be required for an accounting position at a small wine distributor. The job listing for Terravant Wine Company is also unambiguous that it requires a bachelor's degree in accounting and significant prior experience. Id. at 86. Again, this job listing does not provide any information about the size of Terravant Wine Company, which indicates that the job listing may not be indicative of what is commonly required for a small wine distributor like GCCG. The job listings for other small companies also do not list the size of the companies. Id. at 87-95. Because Plaintiffs have not produced clear job listings for similarly situated wine distributors or other small companies that require an accountant, the Court finds that the agency's determination that they have not met their burden in this regard was not arbitrary and capricious.[2]

### b. Letters

USCIS did not respond to the three letters produced by Plaintiffs asserting that it is common for small wine distributors to hire accountants. Plaintiffs argue that the "three letters were crucial for demonstrating this prong and could have done so had they even been considered." P. MSJ at 14. "In circumstances where an agency errs, we may evaluate whether such an error was harmless." Gifford Pinchot Task force v. U.S. Fish and Wildlife Serv., 378 F.3d 1059, 1071 (9th Cir. 2004). Courts "will not usually overturn agency action unless there is a showing of prejudice to the petitioner." Safari Aviation Inc. v. Garvey, 300 F.3d 1144, 1150 (9th Cir. 2002).

---

[2] The Ninth Circuit has set a high bar for the level of specificity required in job listings to establish that the position advertised is common in the relevant industry. In Global Fabricators, Inc. v. Holder, for example, the plaintiff—who was also petitioning for an H-1B visa for a temporary worker—produced job listings to show that a "Senior Structural Steel Detailer" was similar to an architect or engineer, which are both specialty occupations. 320 Fed. App'x 576, 579 (9th Cir. 2009). The court held that the job listings were inadequate because they "either lack[ed] sufficiently detailed job descriptions to compel the conclusion that the duties involved are substantially similar to that of Senior Structural Steel Detailer at Global, or fail[ed] to specify that a bachelor's degree in a specialty field is a prerequisite." Id.

11

The Court finds that the error was harmless because even if the affidavits stated that small wine distributors routinely hire accountants with bachelor's degrees, GCCG would still have been unable to overcome the fact that the job duties of the proffered position described those of a part-time bookkeeper.  Even if Zhang were considered an accountant, the letters Plaintiffs provided do not state that accountants are used among small wine distributors with sufficient clarity to indicate that the agency's failure to consider the letters prejudiced Plaintiffs.  The first letter, from a representative of an accounting firm that has an office in St. Helena, notes that "a wine importing business would normally have an individual assisting with the books and records of the company." A.R. at 142.  In the second letter, the owner of a wholesale distributor states that he has a part-time accountant on staff, and that he knows many other wine distributors who also employ accountants.  A.R. at 143.  The third letter, by a CPA who has worked with wine distributors, notes that "although some such businesses hire accounting firms to perform necessary accounting duties, it is also normal within the field for businesses to hire in-house accountants." A.R. at 144.

These letters do not state, however, whether these accounting roles would require a bachelor's degree, or whether they are more equivalent to bookkeeper responsibilities.  Thus, the agency's error in failing to respond to these letters did not prejudice Plaintiffs because the agency likely would have determined that the letters do not state with sufficient clarity whether accountants are commonly used among small wine distributors or whether accountants employed by wine distributors perform substantially the duties of bookkeepers.

### 3. Previous Employment Of Specialty Occupation Accountant

Plaintiffs acknowledge that GCCG did not employ an in-house accountant before it hired Zhang.  P. MSJ at 15.  Plaintiffs note, however, that this fact is not fatal to the analysis of whether it currently requires the assistance of a specialty occupation accountant.  Id.; see Young China Daily v. Chappell, 742 F. Supp. 552, 555 (N.D. Cal. 1989) ("[T]he fact that the newspaper has not hired members of the professions in this position in the past is irrelevant in a case like this, which involves a newly created position.  Business needs often change over time and employers may have legitimate business reasons for deciding to hire a

12

professional for the first time."). While this prong does not, by itself, indicate that GCCG does not need to employ a specialty occupation accountant, there is no doubt that Plaintiffs have not satisfied this prong.

### 4. Specialized Nature And Complexity Of Specified Duties

USCIS determined that the list of eleven duties that Zhang performs "do not establish that the proffered position is any more specialized or complex than any other bookkeeping job." A.R. at 11. USCIS acknowledged that three of the duties are accounting responsibilities, but stated that the remaining eight were more prevalent among bookkeepers, and that the agency has determined that an employee's responsibilities must "entail mainly the performance of the specialty occupation duties." Def. MSJ at 9. As discussed above, Zhang's responsibilities are mainly the performance of bookkeeper—or non-specialty—duties.

Since six of Zhang's eleven stated responsibilities are closer to the OOH description of bookkeepers than accountants, and Plaintiffs have failed to satisfy the four-factor test articulated in 8 C.F.R. § 214.2(h)(4)(iii)(A), the Court defers to the agency's interpretation of its regulations and finds that the determination that Zhang was not employed in the capacity of a specialty occupation was not arbitrary and capricious.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: November 25, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

13